Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar. No. 151445)
Michaeline H. Correa (Bar No. 215215)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:    (415) 626-3939
Facsimile:    (415) 875-5700
Email:        pjbenvenutti@jonesday.com
              tkeller@jonesday.com
              mcorrea@jonesday.com

Ryan T. Routh (*admitted pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114-1190
Telephone:    (216) 586-3939
Facsimile:    (216) 579-0212
Email:        rrouth@jonesday.com

Lori Sinanyan (Bar No. 209975)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone:    (213) 489-3939
Facsimile:    (213) 243-2539
Email:        lsinanyan@jonesday.com

Attorneys for Debtor and Debtor in Possession
PLANT INSULATION COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 09-31347-TC |
| | Chapter 11 |
| PLANT INSULATION COMPANY, a California corporation, | **DEBTOR'S THIRD MOTION FOR AN ORDER EXTENDING THE EXCLUSIVE PERIOD FOR DEBTOR TO SOLICIT ACCEPTANCES OF ITS PLAN** |
| Debtor. | **Hearing**<br>Date:   September 13, 2010<br>Time:   9:30 a.m.<br>Place:  235 Pine St., 23rd Floor<br>        San Francisco, CA<br>Judge:  Honorable Thomas E. Carlson |

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, COUNSEL FOR THE FUTURE CLAIMS REPRESENTATIVE, AND THOSE PARTIES WHO HAVE REQUESTED SPECIAL NOTICE:**

Plant Insulation Company ("Plant" or the "Debtor"), debtor and debtor in possession, hereby moves this Court for entry of an order, pursuant to section 1121(d) of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), further extending by approximately four months the time period during which the Debtor has the exclusive right to solicit acceptances of its chapter 11 plan from September 17, 2010 to January 20, 2011 (the "Motion"). The Declaration of David J. Gordon (the "Gordon Decl."), filed concurrently herewith, supports this Motion. In further support of the Motion, the Debtor respectfully represents as follows:

**I.     JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

**II.    FACTUAL BACKGROUND**[1]

**A.     The Chapter 11 Case**

On May 20, 2009 (the "Petition Date"), Plant filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 29, 2009, the Office of the United States Trustee (the "UST") appointed the Official Committee of Unsecured Creditors (the "Committee"). On June 8, 2009, the Court entered an order appointing Charles Renfrew as representative (the "Future Claims Representative" or "FCR") of persons who might subsequently assert personal injury or wrongful death demands for damages allegedly caused by their exposure to asbestos or asbestos-containing products in connection with the Debtor's past operations.

---

[1] A detailed discussion of the Debtor's history, business, insurance coverage and related litigation, and the events leading up to the bankruptcy case is contained in the Declaration of David J. Gordon filed May 20, 2009 [Dkt. No. 9] and the Declaration of James Miller filed May 20, 2009 [Dkt. No. 11].

On May 6, 2010, the UST filed its Motion for the Appointment of a Trustee Under 11 U.S.C. § 1104 [Dkt. Nos. 584, 621], which was joined by certain of the Debtor's insurers. The Court denied the UST's motion and the related joinders, and consequently, no chapter 11 trustee or examiner has been appointed in this case.[2] On June 14, 2010, the Debtor, the Committee, and the FCR (the "Plan Proponents") filed a joint plan of reorganization (the "Plan") and a related disclosure statement (the "Disclosure Statement"). [Dkt. Nos. 635, 636, 637] The Plan Proponents are in the process of revising and updating the Plan and intend to file an amended plan in the upcoming weeks.

### B. Summary History of the Debtor

Plant was incorporated in California on March 23, 1937 and was formed to engage in the business of selling, installing, and repairing asbestos, brick, cement, concrete, stone, and other types of fire-proofing and insulating materials. In conjunction with its business, Plant installed and removed asbestos products over a period of many years.

As a result of Plant's sale and installation of asbestos-containing products dating back to the 1930s, Plant has been embroiled in asbestos-related litigation for years. From early 1978 and continuing through the Petition Date, Plant had been subjected to thousands of bodily injury, wrongful death, and loss of consortium claims and lawsuits for damages allegedly caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Plant (collectively, the "Asbestos Cases"). As of the Petition Date, thousands of Asbestos Cases were pending against Plant in California, primarily in Alameda and San Francisco counties. Prior to the Petition Date, approximately 40 new complaints were being filed against Plant each month, and Plant anticipates that numerous additional asbestos-related claims will be asserted against it for many years to come. The potential liabilities represented by present and anticipated future asbestos-related claims against Plant far exceed the value of Plant's non-insurance assets. Plant believes that its historical comprehensive general insurance assets provide coverage for many of the present and future liabilities.

---

[2] The Court also approved the Debtor's request for the appointment, in the ordinary course of business, of the Honorable Ken M. Kawaichi as the Debtor's Conflicts Executive. [Dkt. No. 771.]

**C. Insurance Issues**

    1. Insurance Coverage

Throughout the years during which it sold, handled, and installed the vast majority of the asbestos products that gave rise to the Asbestos Cases, Plant has maintained comprehensive general and excess liability insurance from various insurers. In or around 1988, certain of Plant's insurers began defending Plant in the Asbestos Cases, and the following year, they began to pay settlements or other indemnity amounts. Plant's insurers handled the asbestos suits through their appointed counsel and controlled the defense and settlement of the lawsuits. Beginning in 1991, certain of Plant's insurers began advising Plant that their policies had been "exhausted" and that they would no longer defend or indemnify Plant. Plant proceeded in accordance with these insurers' representations of exhaustion until, around 2001, every one of Plant's insurers had professed exhaustion and asserted that it would no longer defend or indemnify Plant with respect to the Asbestos Cases.

At that time, Plant had insufficient resources with which to defend itself in the Asbestos Cases or to pay settlements or judgments in more than a handful of the cases that were pending when the last insurer asserted exhaustion. In addition, new Asbestos Cases were being filed regularly against Plant. Ultimately, Plant concluded that its insurers' contentions regarding the exhaustion of the policies were incorrect. Accordingly, on January 18, 2006, Plant tendered thousands of Asbestos Cases to its primary insurers and notified the excess insurers of the existence of these cases as well. Notwithstanding their assertion that the primary polices were exhausted, the primary insurers accepted the tender and later began to process, defend and/or settle numerous asbestos claims, pursuant to their policies.

    2. The Declaratory Relief Action

In an effort to ascertain its rights under the policies issued by its solvent insurers, on January 17, 2006, Plant filed an action against substantially all of its insurers (the "Insurers") in the California Superior Court for the County of San Francisco (the "State Court"). *Plant Insulation Co. v. Fireman's Fund Ins. Co.*, No. CGC-06-448618 (the "Declaratory Relief

4

Action").[3] This litigation is currently pending before the Honorable John Munter in the complex litigation department.

In the Declaratory Relief Action, Plant seeks declaratory relief against the Insurers. Judge Munter has conducted the trial in two "phases" so far. Phase I, tried in 2008, principally dealt with Plant's attempt to prove the content of several "lost policies" from the 1940s and early 1960s. On the whole, the court's decision in Phase I was adverse to Plant. Phase II, tried in 2009, dealt with three affirmative defenses — waiver, judicial estoppel, and unclean hands — that the Insurers argued would bar Plant from obtaining any declaratory relief. On May 5, 2010, the court issued a statement of decision rejecting all of the Insurers' defenses at issue in Phase II. *See Plant Insulation Co. v. Fireman's Fund Ins. Co.*, No. CGC-06-448618, 2010 WL 1872674 (Cal. Super. Ct. May 5, 2010); *see also* Debtor's Request for Judicial Notice, filed concurrently herewith.

On May 26, 2010, Plant filed a motion for relief from the automatic stay to continue to pursue the Declaratory Relief Action. [Dkt. No. 610.][4] On July 12, 2010, after the Insurers stipulated to the relief requested, the Court entered an Order granting Plant's motion, thereby permitting the Declaratory Relief Action to continue to "Phase III" in the State Court.

### 3. Settlements with Insurers

Prior to the Petition Date, Plant entered into settlement agreements with two of its Insurers: United National Insurance Company (the "UNIC Settlement Agreement"), and Sompo Japan Insurance Company of America[5] (the "Sompo Settlement Agreement" and, with the UNIC Settlement Agreement, the "Insurance Settlement Agreements"). Prepetition, Plant received over $12 million in payments on account of the Insurance Settlement Agreements.

On July 24, 2009, the Debtor filed motions to approve the assumption of the Settlement

---

[3] The Declaratory Relief Action and its current status are described in various Declarations of James Miller. [Dkt Nos. 11, 290, 429, 612.]

[4] Plant also filed a memorandum of points and authorities [Dkt. No. 611] and two declarations [Dkt. Nos. 612-13] in support of its motion.

[5] Sompo Japan Insurance Company of America was formerly known as Yasuda Fire and Marine Insurance Company of America.

Agreements. [Dkt. Nos. 269, 270.] On August 3, 2010, the Court held a hearing to consider these motions and on August 16, the Court entered orders approving the Debtor's assumption of the Insurance Settlement Agreements. [Dkt. Nos. 790, 791, 792 793.]

If the Court confirms a plan that provides protection to these settling insurers pursuant to section 524(g) of the Bankruptcy Code, Plant will receive an additional $15 million from these insurers under the terms of the Insurance Settlement Agreements.

### D. Exclusivity Deadlines

On August 20, 2009, the Debtor filed a motion to extend the period during which it has the exclusive right to file a plan or plans of reorganization (the "Exclusive Filing Period") through January 15, 2010 and to extend the period during which the Debtor has the exclusive right to solicit acceptances of any plan or plans of reorganization filed during the Exclusive Filing Period (the "Exclusive Solicitation Period"), through March 16, 2010. [Dkt. No. 288]. The motion was unopposed and, on September 24, 2009, the Court entered an order granting the motion. [Dkt. No. 345].

On December 23, 2009, the Debtor filed a second motion to extend the Exclusive Filing Period through July 16, 2010 and the Exclusive Solicitation Period through September 17, 2010. [Dkt. No. 429.] The motion was unopposed and, on January 15, 2010, the Court entered an order granting the motion. [Dkt. No. 440].

### E. Progress Toward Reorganization

Since the inception of this case, Plant has faced a variety of challenges to proposing and confirming a plan of reorganization. At first, negotiations between Plant and the Committee were delayed by the uncertain status of the Committee's chosen counsel, Sheppard Mullin Richter & Hampton LLP ("Sheppard"). Eventually, Sheppard's retention was approved by the Court, thereby allowing negotiations between the Debtor and the Committee to begin. At that time, however, Plant's consideration of a plan was delayed by the lengthy duration of the Phase II litigation of the Declaratory Relief Action. The Phase II trial extended over many days, spread out over a seven-month period from June to December 2009, and involved substantial briefing in 2009 and into early 2010. As an adverse decision in Phase II of the Declaratory Relief Action

6

would have significantly impacted the direction of this case, the Debtor reasonably believed that it was prudent to wait until Phase II was substantially concluded before finalizing a plan.

In the winter and spring of 2010, the Plan Proponents drafted and negotiated the Plan, which included in-person meetings, as well as telephonic and email communications. The negotiation of the Plan also involved numerous consultations by bankruptcy counsel to Plant with the Debtor's Chief Executive Officer and insurance coverage attorneys with responsibility for the Declaratory Relief Action. In addition, because Plant's insurers had indicated that they desired the opportunity to participate in the plan formulation process, repeated attempts were made to involve the insurers in the process and solicit their input on the Plan, including circulating a draft version of the Plan to the insurers in May 2010.

In the midst of these various negotiations, the UST responded to Plant's motion for approval of the hiring of a conflicts executive by filing its motion for the appointment of a chapter 11 trustee, which motion was joined by certain of the Insurers.[6] The Debtor, the Committee, and the FCR focused on the litigation of the conflicts executive and trustee motions through much of April, May, and June 2010, culminating in the June 29, 2010 hearing before the Court on these matters.

Nevertheless, on June 14, 2010, the Plan Proponents jointly filed the Plan and Disclosure Statement. Consistent with the Debtor's prior representations to this Court, the Plan invokes Bankruptcy Code section 524(g) as a means of resolving thousands of asbestos-related personal injury and wrongful death claims asserted against the Debtor. The Plan proposes the establishment of a trust for the administration of various asbestos related claims and demands and provides for a channeling injunction for the protection of participating insurers and other qualifying persons or entities. To further advance the plan process, in July 2010, the Plan Proponents filed a motion seeking to approve certain procedures for the solicitation of and voting on the Plan, approving the form of ballots to be used in voting on the Plan, approving the form and scope of notice of the confirmation hearing, and addressing various other matters (the "Ballot

---

[6] As noted above, this motion and the joinders were ultimately denied by the Court.

Motion").

Certain of the Insurers advised the Plan Proponents that they object to the adequacy of the information in the Disclosure Statement and the relief requested in the Ballot Motion. In addition, certain of the Insurers have proposed their own schedule regarding the timing of litigation on the confirmation of the Plan. The Plan Proponents and the Insurers have met and exchanged correspondence in an effort to resolve matters and narrow the issues in dispute. Currently, a hearing on the adequacy of information in the Disclosure Statement and on the Ballot Motion and the Insurer's scheduling motion is scheduled for September 24, 2010.

One component of the Plan involves the proposed merger of the Debtor with Bayside Insulation, Inc. ("Bayside") and related transactions between the Debtor, Bayside and the Trust. At the time of the filing of the Plan, the Plan Proponents and Bayside had not finalized the terms upon which this merger would be completed, with the filed version of the Plan representing the Plan Proponents' most recent proposal to Bayside. Since the filing of the Plan, the Plan Proponents and Bayside have been involved in numerous meetings and discussions regarding the terms of the merger and related transactions. To assist the Committee and the FCR in these negotiations, the Committee and the FCR jointly engaged a financial advisor in late July 2010 and have recently filed with the Court an application to approve this retention. [Dkt. No. 788]

The Plan Proponents have made significant progress in other areas since the filing of the Plan, including the following:

- The Debtor obtained Court approval of its assumption of the Insurance Settlement Agreements over various objections;

- The Debtor and the Insurers agreed to further stay relief to permit the continued litigation of the Declaratory Relief Action, which litigation has recommenced in the State Court;

- The Debtor has devoted time to seeking additional sources to fund its bankruptcy case;

- The Debtor and the Committee reached an agreement to appoint the Committee as estate representative of the Debtor with respect to the estate's potential claims against John Gregory and Monte Travis, the Debtor's employment agreements with those individuals, and certain related claims; and

- With the appointment of the conflicts executive, the Debtor has begun the process of negotiating the terms upon which its agreement with The Flintkote Company (which provides the Debtor with its CEO, Mr. David Gordon) might be assumed.

8
Case: 09-31347    Doc# 803    Filed: 08/23/10    Entered: 08/23/10 17:03:37    Page 8 of 12
MTN SEEKING EXTENSION OF EXCLUSIVITY, CASE NO. 09-31347

In light of the achievements outlined above, it is clear that the pace of this chapter 11 case has accelerated and that the Debtor and the Plan Proponents are making substantial progress on a number of fronts. Accordingly, the Debtor submits that the Plan Proponents are, or soon will be, well-positioned to seek approval of the Disclosure Statement and confirmation of the Plan.

### III. BASIS FOR RELIEF

This Motion seeks an extension of Plant's Exclusive Solicitation Period through January 20, 2011. Section 1121(d) of the Bankruptcy Code grants this Court authority to extend the Exclusive Solicitation Period up to 20 months after the entry of an order for relief, "for cause" after notice and a hearing. 11 U.S.C. § 1121(d). Although the term "cause" is not defined by the Bankruptcy Code, the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement," in the form of a plan. H.R. Rep. No. 95-595, at 208 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6191; *see also In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting the legislative history); *In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent . . . [is] to promote maximum flexibility . . . ."). To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. *See McLean Indus.*, 87 B.R. at 833-34; *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

Courts have relied on a variety of factors when determining whether cause exists for an extension of the Exclusive Filing Period or Exclusive Solicitation Period, each of which may provide sufficient grounds for extending exclusivity. These factors include:

(1) the size and complexity of the case,
(2) the necessity of sufficient time to negotiate and prepare adequate information,
(3) the existence of good faith progress toward reorganization,
(4) whether the debtor is paying its debts as they come due,
(5) whether the debtor has demonstrated reasonable prospects for filing a viable plan,
(6) whether the debtor has made progress in negotiating with creditors,
(7) the length of time the case has been pending,
(8) whether the debtor is seeking the extension to pressure creditors, and

9

(9) whether unresolved contingencies exist.

*In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (citing *McLean Indus.*, 87 B.R. 830 (Bankr. S.D.N.Y. 1988)); *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 131 (S.D.N.Y. 2006) (citing *Express One*); *In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997).

Under these standards, cause has been found to extend exclusive periods where the debtor has worked diligently to propose a plan, the case is complex, and the extension was neither indefinite nor used to force a creditor to accept an undesirable plan. *See, e.g., In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409-10 (E.D.N.Y 1989) (affirming an extension where debtor proposed a plan and continued to make progress in negotiating with the creditors' committee); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (extension granted where debtor was negotiating in good faith with creditors, even though the debtor had produced only losses and the ultimate success of the turnaround efforts was as yet unknowable); *Texaco*, 16 B.R. at 327 (where the extension was not for the purpose of allowing the debtor to prolong reorganization while pressuring a creditor to accept an undesirable plan); *In re Texaco, Inc.*, 81 B.R. 806, 812-13, (Bankr. S.D.N.Y. 1987) (allowing debtor to maintain exclusivity where several constituencies supported debtor's plan, there was no evidence that the debtor was using the extension to pressure acceptance of the plan, and there was no evidence that the plan violated any requirements under section 1123 of the Bankruptcy Code).

Applying these standards, the Ninth Circuit Bankruptcy Appellate Panel affirmed the extension of exclusivity over a creditors' committee's objections where the bankruptcy court found that most of the factors cited in *Express One* and *Dow Corning* were present. *In re Henry Mayo Newhall Mem'l Hosp.*, 282 B.R. 444, 452 (B.A.P. 9th Cir. 2002). The panel noted further: "We also agree with the *Dow Corning* court that a transcendent consideration is whether adjustment of exclusivity will facilitate moving the case forward toward a fair and equitable resolution." *Id.* (*citing In re Dow Corning*, 208 B.R. at 670).

Cause exists to support the further extension requested herein. In light of the significant progress made in this case to date, the *Express One* factors strongly favor an extension:

(1) The case has thousands (if not tens of thousands) of creditors with claims in the hundreds of millions of dollars or more and involves a chapter 11 case in which section 524(g) relief will be sought. Thus, this case is more complex than most chapter 11 cases notwithstanding the Debtor's current lack of operations.

(2) While the Plan Proponents have reached agreement on many key aspects of the Plan, they are negotiating certain changes to the Plan and need additional time to analyze the Bayside transaction and finalize negotiations with Bayside. Plant also desires time to provide additional information in the Disclosure Statement to address the concerns raised by the Insurers with respect to adequacy of information contained therein.

(3) The Debtor is plainly making good faith progress toward reorganization, as demonstrated by the filing of the Plan and Disclosure Statement in June 2010, the filing of the Ballot Motion in July 2010 and its holding discussions with the Insurers regarding the Disclosure Statement in August 2010.

(4) Other than certain professionals that are willing to defer their compensation for the time being, the Debtor continues to pay its debts as they come due.

(5) Not only has Plant demonstrated the "reasonable prospect" for filing a viable plan, it has in fact already filed a Plan that it believes is confirmable.

(6) The Plan was the result of significant negotiations between the Debtor, the Committee and the FCR, all of which are Plan Proponents. Furthermore, Plant has made progress in its ongoing negotiations with Bayside and its Insurers regarding their treatment under the Plan.

(7) The case has been pending for less than fifteen months. Plant has used that time wisely and effectively and has appropriately prioritized its work, at all times moving toward the filing of the Plan and seeking its confirmation.

(8) In light of the lack of existing operations, this factor is arguably irrelevant here. To the extent relevant, Plant seeks an extension only to continue its negotiations and to work toward a consensual confirmation of the Plan; it does not seek to pressure creditors.

(9) Plant has resolved, or has put itself in a position to shortly resolve, the remaining contingencies, such as the exact structure of the Bayside transaction.

The majority, if not all, of these factors favor an extension of exclusivity for the Debtor here. The Debtor's prior extension requests were based on the delay and inability to effectively negotiate with its constituents toward a consensual plan of reorganization. Since then, much has changed. In the last three months, the Debtor has not only filed a Plan jointly with the Committee and the FCR, but has overcome other substantial roadblocks to confirmation. The Debtor is making substantial progress in this case. Confirmation of the Plan is in the best interests of Plant's creditors as demonstrated by the Committee's sponsorship of the Plan. The Plan is fair and equitable; and a smooth confirmation process, unhindered by the distraction of alternative plans, will result in a maximum distribution to all parties in interest. Taking into account all of the foregoing factors, the Debtor respectfully submits that good cause exists to support the

extension of exclusivity.

## IV. CONCLUSION

Based upon the foregoing, the Debtor respectfully requests that the Court enter an order: (a) extending the Debtor's exclusive period to obtain acceptance of the Plan through January 20, 2011; and (b) granting such further relief as the Court deems proper.

DATED: August 23, 2010                    JONES DAY

By: /s/ Peter J. Benvenutti
    Peter J. Benvenutti
Attorney for Debtor and Debtor in Possession,
Plant Insulation Company

LAI-3104267v9