1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    A Limited Liability Partnership
2    Including Professional Corporations
   MICHAEL H. AHRENS, Cal. Bar No. 44766
3  STEVEN B. SACKS, Cal. Bar No. 98875
   MICHAEL M. LAUTER, Cal. Bar No. 246048
4  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4109
5  Telephone:    415-434-9100
   Facsimile:    415-434-3947
6
   Attorneys for the OFFICIAL COMMITTEE
7  OF UNSECURED CREDITORS

8

9

10                UNITED STATES BANKRUPTCY COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  In re                              Case No. 09-31347

15  PLANT INSULATION COMPANY, a       Chapter 11
    California corporation,
16                                     **FOURTH INTERIM APPLICATION
                  Debtor.              OF SHEPPARD, MULLIN, RICHTER
17                                     & HAMPTON LLP FOR
    Tax ID: 94-0292481                 ALLOWANCE OF COMPENSATION
18                                     AND REIMBURSEMENT OF
                                       EXPENSES INCURRED AS COUNSEL
19                                     FOR THE OFFICIAL COMMITTEE
                                       OF UNSECURED CREDITORS OF
20                                     PLANT INSULATION COMPANY**

21                                     Date:     December 3, 2010
                                       Time:     9:30 a.m.
22                                     Judge:    Hon. Thomas E. Carlson
                                       Place:    Courtroom 23
23                                               235 Pine Street
                                                 San Francisco, CA
24

25

26

27

28

W02-WEST:5MML1\402985789.1                              FOURTH INTERIM APPLICATION

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................... 1

II. RELIEF REQUESTED AND BASIS FOR RELIEF ................................ 5

III. EMPLOYMENT AND PRIOR COMPENSATION ................................ 6

    A. First Interim Application. ............................................................ 7

    B. Second Interim Application. ......................................................... 8

    C. Third Interim Fee Application. ..................................................... 9

    D. Further Cover Sheet Applications. ............................................. 10

IV. CASE STATUS ....................................................................................... 10

V. EXHIBITS TO APPLICATION ........................................................... 11

VI. SUMMARY OF PROFESSIONAL SERVICES RENDERED .............. 12

VII. PROJECT BILLING .............................................................................. 12

    A. Maintenance Of Records ............................................................ 12

    B. Use Of Project Billing Categories ............................................. 12

        1. Administration ............................................................... 13

        2. Employee Matters ......................................................... 13

        3. Insurance Issues ............................................................ 14

        4. Case Administration ...................................................... 14

        5. Chapter 11 Trustee Issues ............................................. 14

        6. Settlement Matters ........................................................ 16

        7. Relief from Stay/Adequate Protection .......................... 16

        8. Case Administration – General ..................................... 16

        9. Committee Matters/Communications ............................ 16

        10. Rule 2019 Issues ........................................................... 17

W02-WEST:5MML1\402985784.1

| | | | |
|---|---|---|---|
| 11. | Claims and Plan | | 17 |
| 12. | Claims - Unsecured | | 17 |
| 13. | Claims Administration/Objections | | 18 |
| 14. | Ballot Issues | | 18 |
| 15. | Disclosure Statement | | 19 |
| 16. | Plan of Reorganization | | 19 |
| 17. | Bankruptcy Court Litigation | | 20 |
| 18. | Deposition | | 21 |
| 19. | Relief from Stay Litigation | | 21 |
| 20. | State Court Litigation | | 21 |
| 21. | Motion to Approve Compromise of Controversy | | 22 |
| 22. | Professionals' Compensation (Other than Sheppard) | | 22 |
| 23. | Professionals' Employment (Other than Sheppard) | | 22 |
| 24. | Sheppard Compensation | | 23 |
| 25. | Executory Contract – Analysis | | 23 |
| 26. | Matrix/TDP Issues | | 24 |
| 27. | Experts – Preparation of Expert Opinions | | 24 |
| VIII. | EXPENSE REIMBURSEMENT | | 24 |
| IX. | CONCLUSION | | 25 |

Case: 09-31347    Doc# 882    Filed: 10/29/10    Entered: 10/29/10 10:09:52    Page 3 of 29

W02-WEST:5MML1\402985781.1                                                    FOURTH INTERIM FEE APPLICATION

# I.

## INTRODUCTION

This is the fourth interim fee application (the "Fourth Interim Application") for allowance of compensation and reimbursement of expenses of Sheppard, Mullin, Richter & Hampton LLP ("Sheppard") as bankruptcy counsel for the Official Committee of Unsecured Creditors (the "Committee") of Plant Insulation Company (the "Debtor") in the above-captioned chapter 11 case.

Sheppard seeks approval of compensation for professional legal services rendered and reimbursement of expenses incurred as counsel for the Committee from June 1, 2010 through September 30, 2010 (the "Fourth Application Period") totaling $584,118.62. This amount consists of professional fees of $570,153.00 and reimbursement of expenses of $13,965.62.

To date the Court has approved on interim basis the following fees and expenses of Sheppard: (a) for the period from May 20, 2009 through September 30, 2009 (the "First Application Period"), compensation totaling $37,202.04, consisting of total professional fees of $35,004.50 and expenses of $2,197.54; (b) for the period from October 1, 2009 through January 31, 2010 (the "Second Application Period"), compensation totaling $122,427.96, consisting of total professional fees of $121,602.00 and expenses of $825.96; and (c) for the period from February 1, 2010 through May 31, 2010 (the "Third Application Period"), compensation totaling $507,454.99, consisting of total professional fees of $497,087.50 and expenses of $10,367.49.

On September 26, 2009, this Court entered its *Order Granting Debtor's Motion to Establish Interim Fee Application and Expense Reimbursement Procedures* [Dckt #344] (the "Knudsen Order"). Subject to the terms and conditions set forth therein, the Knudsen Order authorized professionals whose employment had been approved by the Court to be paid amounts representing 80% of such firm's fees and 100% of such firm's expenses on an interim basis prior to approval of a formal fee application through the filing and service of a monthly cover sheet application ("Cover Sheet Application") for such amounts

W02-WEST:5MML1\402985787.9

pursuant to the procedures set forth in the Knudsen Order. As described in detail below, Sheppard filed four Cover Sheet Applications for periods covered in the Fourth Application Period, and was paid approximately 11% of its fees (or $63,672.74) and approximately 40% of its expenses (or $5,604.14) through the application of its retainer to such amounts. Sheppard's retainer has been fully applied, such that it is no longer holding any amount as a retainer.

Though the First Application Period extended from May 20, 2009 to September 30, 2009, Sheppard did not seek in its prior Applications, and does not seek in this Fourth Interim Application, any compensation or reimbursement for expenses prior to August 5, 2009, the date that this Court entered its *Memorandum re Appointment of Counsel for Official Committee of Unsecured Creditors* (the "Memorandum Decision").

The Committee's application to employ Sheppard was objected to by United States Fire Insurance Company ("U.S. Fire"). After extensive briefing and multiple court hearings, the Court entered the Memorandum Decision, approving Sheppard's employment. U.S. Fire appealed the appointment of Sheppard as Committee counsel and that appeal has now been dismissed. Sheppard has spent substantial time before and after the entry of the Memorandum Decision (during all Application Periods, but primarily the First and Second Periods) with regard to its employment as Committee counsel. Such matters are hereinafter called the "Sheppard Employment Matters." In addition, prior to the entry of the Memorandum Decision Sheppard did certain work during the First Application Period for the Pre-Petition Committee[1] (the "Pre-Petition Committee Work"). Sheppard did not seek payment in the First, Second or Third Interim Applications, and is

---

[1] "Pre-Petition Committee" refers to the Informal Asbestos Creditors' Committee of Plant Insulation Company that was formed prior to this bankruptcy case, and which Sheppard represented. The Pre-Petition Committee was composed of three members, all of whom are the designated representatives for members of the Official Committee: (a) Alan Brayton of Brayton Purcell; (b) David M. McClain, of Kazan McClain; (c) Jerry Neil Paul of Paul Hanley & Harley. More detail regarding Sheppard's representation of the Pre-Petition Committee is set forth in the Declaration Of Michael H. Ahrens In Support Of Application For Order Authorizing Employment Of Sheppard, Mullin, Richter & Hampton LLP As Counsel For The Official Committee Of Unsecured Creditors [Dckt #87].

1  not seeking payment in this Fourth Interim Application, for: (i) any time prior to the date

2  of the Memorandum Decision; (ii) the Sheppard Employment Matters; or (iii) the Pre-

3  Petition Committee Work. Sheppard reserves the right to seek compensation for such

4  matters in any future Interim Fee Application or in a Final Fee Application.

5      As will be set forth in additional detail in other parts of this Application, Sheppard's

6  efforts on behalf of the Committee during the Fourth Application Period have constituted

7  significant strides in the plan confirmation process and the progress of this case. Sheppard,

8  in cooperation with the Committee, accomplished the following during the Fourth

9  Application Period:

10      (i)    Sheppard took the lead in drafting and negotiating a Plan, Disclosure

11  Statement and all related Plan documents (including the trust distribution procedures and

12  the claims matrix) with co-proponents the Debtor and the Futures Representative, which

13  Sheppard filed during the Fourth Application Period. The filing of the Plan and Disclosure

14  Statement on June 14, 2010 was a significant step towards a successful reorganization in

15  this case and the provision of relief to the large number of sick and dying asbestos victims

16  whose state court cases are stayed. The Plan and Disclosure Statement were the

17  culmination of months of drafting and negotiation over specific provisions, which

18  negotiations and revisions intensified in the weeks leading up to the filing. Sheppard also

19  negotiated with the Debtor's insurers, including at in person meetings, to obtain their input

20  on the Plan, both before and after the Plan was filed. Negotiations on the provisions of the

21  Plan and Plan-related issues have continued among the Committee, the Debtor, the Futures

22  Representative, the Debtor's insurers, and other parties, with Sheppard leading said

23  negotiations on behalf of the Committee. These negotiations have included an in person

24  meeting with the Insurers to address the bullet points objections to the Disclosure

25  Statement and the term sheet for a plan prepared by the Insurers. Further, in addition to

26  the above, Sheppard also prepared and served all creditors in this case with the notice of

27  the Disclosure Statement hearing.

28

1     (ii)     Sheppard strenuously and successfully opposed a motion to appoint a trustee

2   in this case first made in a countermotion by the U.S. Trustee, then made in multiple

3   joinders and other pleadings by the Debtor's insurers.  The Committee and the other Plan

4   Proponents felt strongly that appointment of a trustee would have significantly delayed the

5   plan confirmation process at a point in the case where the Debtor, the Futures

6   Representative and the Committee had finally agreed to the terms of a plan after months of

7   negotiation.  Further, the Committee felt that the limited conflicts issues posed did not

8   necessitate appointment of a trustee, but merely required the appointment of a further

9   officer of the Debtor to make decisions on behalf of the Debtor in matters in which the

10  Debtor's CEO had a potential conflict, per the normal practice of corporations.  Sheppard

11  thus researched and filed multiple briefs opposing the appointment of a trustee, and

12  advocated on behalf of the Committee at the hearing on the trustee motion.  At the

13  conclusion of the hearing, the U.S. Trustee's motion was denied, thus marking a

14  significant victory for the Committee, the other Plan Proponents, and the progress of this

15  bankruptcy case generally.

16     (iii)     Sheppard drafted a motion to approve specialized ballots to be utilized in

17  connection with voting on the Plan, to accommodate the peculiarities of voting in the

18  524(g) scenario in general and this case in particular.  This included drafting the forms of

19  the ballots and the voting procedures, all of which Sheppard negotiated with the Debtor

20  and the Futures Representative.  Sheppard has also reviewed objections to the Ballot

21  Motion filed by certain insurers and conferred with the other Plan Proponents and the

22  insurers regarding said objections.

23     (iv)     Sheppard interviewed several candidates to serve as financial consultant to

24  the Committee and the Futures Representative in connection with plan confirmation,

25  negotiated the terms of the retention of Charter Oak, the consultant that was chosen, and

26  then sought and obtained Court approval for the retention.  Sheppard then brought the

27  consultant up to speed and has worked with the consultant on various plan confirmation

28  issues.

Case: 09-31347   Doc#: 882   Filed: 10/29/10   Entered: 10/29/10 10:09:52   Page 7 of 29

(v)     With the Debtor's conflicts executive now in place, Sheppard has reviewed documents and matters relating to the employment of the Debtor's CEO and negotiated with the Debtor through the conflicts executive regarding the terms of that employment.

(vi)    Sheppard also reviewed the motion by the Debtor's insurers to require compliance by attorneys representing asbestos victims to file statements under Federal Rule of Bankruptcy Procedure 2019 and advised the Committee regarding the issues posed in the motion.  Sheppard drafted a response to the motion, drafted exemplar 2019 statements for attorneys for asbestos victims to use and adapt, and negotiated with the insurers' counsel regarding a potential resolution of the issues posed.

(vii)   Sheppard negotiated with the Debtor regarding a stipulation to assign estate claims against Messrs. Gregory and Travis to the Committee, and drafted a stipulation and draft motion to approve the stipulation.

(viii)  Sheppard represented the Committee in connection with the discussions and hearings on the Debtor's third motion to extend exclusivity, the Debtor's motion to assume pre-petition settlement agreements with two insurers, and various relief from stay matters.

(ix)    Sheppard kept the Committee constantly updated regarding matters and developments in this case, and has stayed in close contact with the Committee in order to develop strategies relating to said matters.

## II.

## RELIEF REQUESTED AND BASIS FOR RELIEF

Sheppard seeks an order of the Court (1) granting interim approval of compensation totaling $584,118.62, consisting of total professional fees of $570,153.00 and reimbursement of expenses totaling $13,965.62, for services rendered on behalf of the Committee during the Fourth Application Period; (2) ratifying any payments previously made to Sheppard for that time period pursuant to the Knudsen Order, which payments as of the filing of this Fourth Interim Application totaled $69,276.88, consisting of $63,672.74 in fees and $5,604.14 in expenses; (3) authorizing and directing the Debtor to make immediate payment to Sheppard of the $514,841.74 in allowed and outstanding

W02-WEST:5MML1\402985784.1                                         FOURTH INTERIM FEE APPLICATION

amounts approved and unpaid, which amount consists of (a) $490,566.76 in fees and $6,340.79 in expenses not yet paid from Sheppard's monthly cover sheet applications; and (b) $17,934.19, consisting of $15,913.50 in fees and $2,020.69 in expenses, incurred in the Fourth Application Period and not previously billed; and (4) granting such other and further relief as the Court may deem just and proper.

Sheppard estimates that it will incur approximately $10,000.00 in fees preparing this Fourth Interim Application, representing approximately 1.7% of the amount sought in the Application. Because those fees are incurred after the Fourth Application Period, no application is made in this Fourth Interim Application for payment of such amounts.

Sheppard's request for relief is based on this Application, the omnibus notice (the "Notice") on interim fee applications filed concurrently herewith by the Debtor, the declaration of Michael H. Ahrens filed in support of the Fourth Interim Application, and all related declarations and pleadings previously filed, or that may be filed, prior to the hearing on this matter.

This Fourth Interim Application is made pursuant to the provisions of Bankruptcy Rule 2016 and Section 330 of title 11 of the United States Code (the "Bankruptcy Code"). Except as otherwise noted in the pages that follow, the Application conforms with the United States Trustee's guidelines for compensation and expense reimbursement for professionals (the "UST Guidelines") and the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees for the United States Bankruptcy Court, Northern District of California ("District Guidelines"). The UST Guidelines and the District Guidelines are referred to together as the "Guidelines" in this Application.

In support of the Fourth Interim Application, Sheppard respectfully represents as follows:

### III.

### EMPLOYMENT AND PRIOR COMPENSATION

Sheppard's employment was approved by this Court's Memorandum Decision, which was entered on the docket on August 5, 2009 [Dckt. #275]. After both Sheppard

and the Committee filed statements accepting the conditions of Sheppard's employment set forth in the Memorandum Decision,[2] the Court entered its *Order Appointing Counsel for Creditors Committee* [Dckt #282] (the "Appointment Order") on August 12, 2009, confirming Sheppard's appointment as Committee counsel. A subsequent appeal of Sheppard's appointment as Committee counsel was dismissed by the District Court on April 14, 2010.

As previously disclosed in the Declaration of Michael H. Ahrens in support of the Committee's application to employ Sheppard, as of the petition date, Sheppard possessed a prepetition retainer in the amount $736,361.87 (the "Retainer").[3] This amount constituted the sum of a $675,000.00 retainer transferred by the Debtor to Sheppard immediately prior to the petition date, as well as amounts remaining from retainers advanced by the Debtor to Sheppard on account of the Pre-Petition Committee. As described in detail below, pursuant to this Court's orders approving Sheppard's First, Second and Third Interim Applications and pursuant to Sheppard's Cover Sheet Applications pertaining to the Fourth Application Period, Sheppard applied the Retainer to the amounts approved in these orders and allowed under the Cover Sheet Applications and thereby exhausted the Retainer. Sheppard no longer holds any Retainer from the Debtor.

This is Sheppard's fourth interim application for payment of fees and reimbursement of costs in this case. Sheppard previously applied for approval of professional fees and expenses as follows:

**A.      First Interim Application.**

Sheppard filed its First Interim Application on October 30, 2009 [Dckt #375] seeking $37,202.04 in total compensation, consisting of $35,004.50 in professional fees and $2,197.54 in expenses for the First Application Period covering the period from

---

[2] *See* Docket #s 276 and 277.

[3] *See* ¶ 43, Declaration Of Michael H. Ahrens In Support Of Application For Order Authorizing Employment Of Sheppard, Mullin, Richter & Hampton LLP As Counsel For The Official Committee Of Unsecured Creditors [Dckt #87].

1   May 20, 2009 through September 30, 2009.  The fees and expenses sought in the First

2   Interim Application included those amounts evidenced in Sheppard's First and Second

3   Cover Sheet Applications filed pursuant to the Knudsen Order.[4]  U.S. Fire objected to

4   Sheppard's First Interim Application as well as to its First and Second Cover Sheet

5   Applications.  After a hearing held on November 30, 2009, this Court overruled all of U.S.

6   Fire's objections and entered an order dated December 6, 2009 [Dckt #405] (the "First

7   Application Order") approving the $37,202.04 in compensation requested in the First

8   Interim Application.  A copy of the First Application Order is attached hereto as

9   Exhibit A-1.  Following the entry of the First Application Order, and pursuant to the

10  provisions of said Order, Sheppard applied the Retainer to the $37,202.04 in fees and

11  expenses approved for the First Application Period.

12  **B.      Second Interim Application.**

13          On November 25, 2009, Sheppard filed its Third Cover Sheet Application[5] pursuant

14  to the Knudsen Order with respect to its fees and expenses incurred during the period

15  beginning October 1, 2009 through October 31, 2009.  U.S. Fire filed an objection[6] to the

16  Third Cover Sheet Application on December 4, 2009.  Sheppard elected not to file Cover

17  Sheet Applications for the months of November 2009, December 2009 or January 2010.

18  On March 2, 2010, Sheppard filed its Second Interim Application [Dckt #483] seeking

19  compensation totaling $122,427.96, consisting of $121,602.00 in professional fees of

20  $825.96 in expenses for the Second Application Period covering the period from

21  October 1, 2009 through January 31, 2010, which amounts included those sought in

22  Sheppard's Third Cover Sheet Application.  U.S. Fire filed an objection to the Second

23  Interim Application on March 11, 2010.[7]

24

25  _____

26  [4] *See* Docket #s 328 and 362, respectively.

    [5] *See* Docket #397.

27  [6] *See* Docket #403.

28  [7] *See* Docket #496.

Pursuant to the Knudsen Order, the fees and expenses sought in the Third Cover Sheet Application were considered along with U.S. Fire's objections at the hearing on the Second Interim Application. After a hearing held on March 29, 2010, this Court overruled all of U.S. Fire's objections in its order entered on March 31, 2010 [Dckt #519] (the "Second Application Order") approving the $122,427.96 in compensation requested in the Second Interim Application. A copy of the Second Application Order is attached hereto as Exhibit A-2. Following the entry of the Second Application Order, and pursuant to the provisions of said Order, Sheppard applied the Retainer to the $122,427.96 in fees and expenses approved for the Second Application Period.

**C.      Third Interim Fee Application.**

Sheppard filed its Third Interim Fee Application on June 30, 2010, seeking approval of $507,454.99 in total compensation for the period from February 1, 2010 through May 31, 2010, consisting of total professional fees of $497,087.50 and expenses of $10,367.49. This included amounts sought in Sheppard's Fourth, Fifth, Sixth and Seventh Cover Sheet Applications. U.S. Fire objected to Sheppard's Fourth Cover Sheet Application, but after a hearing was held on that objection on April 16, 2010, the Bankruptcy Court overruled the objection and issued an order providing that U.S. Fire shall be deemed to have a standing objection to Sheppard's fee applications based on its contentions that the order appointing Sheppard was improper, and shall be deemed to have preserved any such arguments without the need for filing further objections. U.S. Fire has therefore not filed any objections to Sheppard's fee applications since the hearing on its objection to the Fourth Cover Sheet Application.

After a hearing held on July 26, 2010, this Court entered an order approving all amounts sought in Sheppard's Third Interim Application on July 28, 2010 [Dckt #768] (the "Third Application Order"). A copy of the Third Application Order is attached as Exhibit A-3. After the Third Application Order was entered, Sheppard applied its Retainer to the $108,157.18 that was approved in that Order and not yet paid pursuant to the Knudsen Order.

Case: 09-31347    Doc#: 882    Filed: 10/29/10    Entered: 10/29/10 10:00:52    Page 12 of 29
W02-WEST:5MML1\402985789.2                                                      FOURTH INTERIM FEE APPLICATION

**D.      Further Cover Sheet Applications.**

Pursuant to the Knudsen Order, Sheppard filed monthly Cover Sheet Applications for payment of fees and reimbursement of expenses on July 20, 2010, August 10, 2010, September 9, 2010 and October 8, 2010.[8]  No objections were filed to any of the foregoing Cover Sheet Applications.  As such, pursuant to the Knudsen Order, Sheppard was entitled pursuant to the Knudsen Order to apply its Retainer to 80% of the fees and 100% of the expenses requested in each Cover Sheet Application.  However, the Retainer was exhausted after it was applied to 100% of the expenses ($5,604.14) and a portion of the fees ($63,672.74) requested in the Eighth Cover Sheet Application.   Sheppard has not received any further payment on any of the Cover Sheet Applications filed during the Fourth Application Period.  The following is a breakdown of the Cover Sheet Applications filed by Sheppard for the Fourth Application Period:

| Cover Sheet | Period Covered | Fees | Expenses | Fees Paid | Expenses Paid | Unpaid Fees | Unpaid Expenses |
|---|---|---|---|---|---|---|---|
| 8th | 6/1/10 – 6/30/10 | $226,976.50 | $ 5,604.14 | $63,672.74 | $ 5,604.14 | $163,303.76 | $0 |
| 9th | 7/1/10 – 7/30/10 | $125,346.00 | $3,686.39 | $0 | $ 0 | $125,346.00 | $3,686.39 |
| 10th | 8/1/10 – 8/30/10 | $106,569.00 | $1,624.23 | $0 | $ 0 | $106,569.00 | $1,624.23 |
| 11th | 9/1/10 – 9/30/10 | $95,348.00 | $1,030.17 | $0 | $ 0 | $95,348.00 | $1,030.17 |

# IV.

# CASE STATUS

A general background discussion regarding the status of the case is contained in the contemporaneously filed fee application of Debtor's counsel and is incorporated by this reference as contemplated under District Guideline, I.2.[9]

---

[8] *See* Docket #s 738, 785, 821 and 855 respectively.

[9] *See* District Guideline, I.2.

W02-WEST:5MML1\402985789.12                                                    FOURTH INTERIM FEE APPLICATION

# V.

## EXHIBITS TO APPLICATION

The exhibits attached to this Application are as follows:

A copy of the First Application Order is attached as <u>Exhibit A-1</u>.

A copy of the Second Application Order is attached as <u>Exhibit A-2</u>.

A copy of the Third Application Order is attached as <u>Exhibit A-3</u>.

Copies of the Memorandum Decision and the Appointment Order are attached as <u>Exhibit B</u>.

Detailed statements (the "Statements") of the services Sheppard performed and the out-of-pocket expenses Sheppard incurred during the Fourth Application Period are set forth on <u>Exhibit C-1</u>, <u>Exhibit C-2</u>, <u>Exhibit C-3</u>, <u>Exhibit C-4</u>, and <u>Exhibit C-5</u>. The first four Statements cover the following portions of the Fourth Application Period, respectively: (i) June 1, 2010 through June 30, 2010, (ii) July 1, 2010 through July 31, 2010, (iii) August 1, 2010 through August 31, 2010, and (iv) September 1, 2010 through September 30, 2010. These Statements were used for Sheppard's Seventh, Eighth, Ninth and Tenth Cover Sheet Applications, respectively. <u>Exhibit C-5</u> covers a handful of time entries during the Fourth Application Period that was not picked up on the monthly bills attached to the Cover Sheet Applications.

The Statements set forth Sheppard's time and expense records as kept in the ordinary course of Sheppard's business, and contain the following information: the names of each attorney or paralegal performing services, the description of the services, and the amount of time incurred for their services. The Statements are organized in chronological order, separated by billing categories for each task or matter (each a "Project Billing Category") as required by the Guidelines. Summaries of the professional fees incurred by each attorney or paralegal performing services, the hourly rate, the amount of time spent and related fees, are set forth on Exhibit C-1 at pages 29 and 30, Exhibit C-2 at page 22, Exhibit C-3 at page 19, Exhibit C-4 at page 19, and Exhibit C-5 at page 7. Summaries of Sheppard's expenses are set forth on Exhibit C-1 at pages 31 and 32, Exhibit C-2 at pages

23 and 24, Exhibit C-3 at page 20, Exhibit C-4 at page 20, and Exhibit C-5 at pages 8 and 9.

A summary of the Project Billing Categories used by Sheppard during the Fourth Application Period is set forth on <u>Exhibit D</u>.  That summary includes the total professional hours spent and the total fees requested under each category.

A copy of Sheppard's letter to Alan R. Brayton and David McClain (the co-chairmen of the Committee) inviting discussion, questions, comments, concerns or objections to the Fourth Interim Application, is attached as <u>Exhibit E</u>.

**VI.**

**SUMMARY OF PROFESSIONAL SERVICES RENDERED**

Sheppard's attorneys spent 970.70 hours in performing the services described in the Application, at an average hourly billing rate of approximately $587.36.  Partners Michael H. Ahrens and Steven B. Sacks, and associate Michael M. Lauter, performed the majority of the work in this case.

**VII.**

**PROJECT BILLING**

**A.      Maintenance Of Records**

In compliance with the Guidelines, Sheppard maintained its time records on a "Project Billing Category" basis.  Exhibits C-1 through C-5 provide summaries of the Project Billing Categories, the total professional hours spent in each category and the total fees requested for each category.

**B.      Use Of Project Billing Categories**

A narrative discussion of the work Sheppard performed in each Project Billing Category is set forth in the paragraphs that follow.  Under the Guidelines, "[t]he maximum amount that should be included in a single category should generally be $20,000.  This cap may be exceeded where further breakdown is impractical." *See* Northern District Guidelines, at § I.3.  In some instances the fees for a single category of project in this Fourth Interim Application exceeded $20,000.  This is a result of the size and scope of

certain of the projects Sheppard performed. Accordingly, it would be impractical to break down all of the categories in this case to $20,000 or less.

It is inevitable that not all matters fit precisely into one category, or that some items fit appropriately into more than one category. Additionally, as in the case of telephone conferences or meetings where more than one subject is discussed, a time entry dealing with more than one subject must occasionally be placed in only one category. Thus, while Sheppard has diligently attempted to segregate its time into the appropriate category, there may be some overlap between and among categories. In some instances where an attorney assigns a project to another attorney, only one of the attorneys will bill for that time.

A discussion of the work performed in the Project Billing Categories follows below.

### 1. Administration

Sheppard reviewed the bankruptcy case docket and calendared hearings and other matters.

Sheppard spent a total of 0.10 hours and incurred fees totaling $39.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-4, p. 2.

### 2. Employee Matters

Sheppard reviewed the objections filed to the Debtor's motion to appoint a Conflicts Executive (the "Conflicts Executive Motion"), researched various of the legal issues posed, conferred with the Committee regarding the issues raised by the objections, and coordinated a response to the objections with the Debtor's counsel and the Futures Representative's counsel through several telephone and email conferences. Further, Sheppard negotiated with the U.S. Trustee and with the insurers who had objected to the Conflicts Executive Motion to attempt to resolve their objections. Sheppard also negotiated with the Debtor over further revisions to the term sheet for the employment of the Conflicts Executive in order to address concerns of the Committee.

W02-WEST:5MML1\402985781.2                                    FOURTH INTERIM FEE APPLICATION

Sheppard spent a total of 24.90 hours and incurred fees totaling $15,914.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1. p.4.

### 3. Insurance Issues

Sheppard reviewed, researched and responded to questions of the Debtor's insurers on the Plan, and met with the Committee regarding issues posed by the insurers. Sheppard also reviewed pre-petition settlements with certain of the Debtor's insurers, coordinated with the Committee and the Debtor regarding the Committee's position on said settlements, reviewed and conferred with the Committee regarding the Debtor's insurers' objections to said settlements, and prepared for and advocated for the Committee at the hearing on said settlements.

Sheppard spent a total of 16.60 hours and incurred fees totaling $11,306.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-2, p.3, Exhibit C-3, p.2, and Exhibit C-5, p.2.

### 4. Case Administration

Sheppard maintained updated lists of addresses and service lists of parties in the case and conferred with parties regarding the same. Sheppard also obtained documents from the Court's electronic docket on PACER regarding this bankruptcy case.

Sheppard spent a total of 1.60 hours and incurred fees totaling $587.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-2, p.3, and Exhibit C-3, p.3.

### 5. Chapter 11 Trustee Issues

In the same pleading in which the U.S. Trustee objected to the Debtor's Conflicts Executive Motion, the U.S. Trustee also filed a countermotion to appoint a chapter 11 trustee. At this point in the case, the Committee had expended significant efforts drafting, negotiating and finalizing the Plan, Disclosure Statement, and all related trust and matrix documents with the Debtor, the Futures Representative and various other parties in interest. The Committee felt strongly that a chapter 11 trustee was not warranted, and that

the appointment of a chapter 11 trustee would cause significant delays in the plan confirmation process thereby injuring the Committee's constituents of sick and dying asbestos victims by delaying recovery to them.

Sheppard thus worked quickly and tirelessly to research, draft and coordinate with the other Plan Proponents (the Debtor and the Futures Representative) to draft a response to the U.S. Trustee's Motion. Sheppard also reached out to the U.S. Trustee to explain the status of the parties' efforts in the case and attempt to work out the U.S. Trustee's issues with the Conflicts Executive Motion and the Debtor's management. Certain of the Debtor's insurers then filed a lengthy joinder to the U.S. Trustee's motion. Sheppard again performed a significant amount of factual and legal research and drafted a response to that joinder, and coordinated with the other Plan Proponents regarding the same. When the Debtor's insurers filed another lengthy supplement to their joinder, Sheppard again performed significant research and prepared a response to said supplement. During this entire time, Sheppard also kept in constant communication with the Committee regarding the issues raised in the trustee motion, the status of negotiations and efforts to resolve those issues, and the formulation of various strategies in connection therewith.

Sheppard also prepared for and advocated for the Committee at the hearing on the Trustee Motion and the Conflicts Executive Motion. The end result was a very positive one for the Committee and the progress of this bankruptcy case. The Trustee Motion was denied, and the Conflicts Executive Motion granted. After the hearing, Sheppard also reviewed and commented on the form of orders denying the Trustee Motion and granting the Conflicts Executive Motion, and coordinated with the Debtor regarding a response to the objections filed by certain of the Debtor's insurers to said orders.

Sheppard spent a total of 254.40 hours and incurred fees totaling $136,622.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p. 13, Exhibit C-2, p.4, and Exhibit C-5, p. 3.

### 6. Settlement Matters

Sheppard reviewed pleadings regarding two settlements with the Debtor's insurers, coordinated with the Debtor and the Futures Representative regarding said settlements, attended the court hearing on approval of the settlements, and coordinated with the parties regarding the form of order approving the settlements.

Sheppard spent a total of 2.30 hours and incurred fees totaling $1,449.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-3, p.3.

### 7. Relief from Stay/Adequate Protection

The Debtor filed a motion for relief from stay to continue with Phase III of the state court insurance coverage litigation prior to the Fourth Application Period in May 2010. The hearing on this motion was on June 29, 2010 though, so during the Fourth Application Period, Sheppard represented the Committee at the hearing on the motion and also reviewed and revised the form of order granting the motion.

Sheppard spent a total of 1.60 hours and incurred fees totaling $1,008.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.14

### 8. Case Administration – General

Sheppard monitored the electronic docket and coordinated regarding filings and next steps for the Committee in this bankruptcy case.

Sheppard spent a total of 1.60 hours and incurred fees totaling $316.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p. 15

### 9. Committee Matters/Communications

Sheppard coordinated and communicated with the Committee members regarding all aspects of the case, including the letter sent to the U.S. Trustee on the Trustee Motion and Conflicts Executive Motion, various issues related to the Plan and necessary revisions to drafts of the Plan, and issues raised in further negotiations concerning the Plan after it

was filed.  Sheppard also coordinated with the Committee and drafted all necessary resolutions, consents, minutes and other documents to form a subcommittee for the purpose of considering a particular matter.

Sheppard spent a total of  16.20 hours and incurred fees totaling $10,432.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.16, Exhibit C-2, p.6, Exhibit C-3, p.4, and Exhibit C-4, p.3.

### 10.    Rule 2019 Issues

On July 14, 2010, certain of the Debtor's insurers filed a motion to compel counsel for asbestos plaintiffs to submit statements under Federal Rule of Bankruptcy Procedure 2019.  Sheppard reviewed the insurers' motion and researched and drafted a response to the motion.  Sheppard also counseled the Committee on the issues raised, and negotiated with the insurers regarding potential resolutions.  Further, Sheppard conferred with the Debtor's counsel regarding the issues raised in the insurers' motion, and drafted form 2019 statements for asbestos plaintiffs' counsel to file, and researched related issues regarding the content of the Rule 2019 statements.

Sheppard spent a total of 21.20 hours and incurred fees totaling $11,530.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-2, p.7, Exhibit C-3, p.5, Exhibit C-4, p.3, and Exhibit C-5, p.4.

### 11.    Claims and Plan

Sheppard reviewed court decisions impacting individual claims and impacting the treatment of certain claims, and also coordinated with the Debtor's counsel regarding correspondence from the Debtor's insurers addressing claims issues.

Sheppard spent a total of 1.70 hours and incurred fees totaling $1,071.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.16.

### 12.    Claims - Unsecured

Sheppard reviewed issues relating to unsecured claims in this case and conferred regarding the same.

Sheppard spent a total of 1.80 hours and incurred fees totaling $1,386.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-5, p.3.

### 13. Claims Administration/Objections

Sheppard reviewed a draft objection to certain unsecured claims in the bankruptcy case and conferred with the Futures Representative's counsel regarding the same. Sheppard also reviewed a draft objection to another claim in the bankruptcy case, researched the same, and participated in conference calls with the parties regarding the potential objection.

Sheppard spent a total of 8.40 hours and incurred fees totaling $ during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-3, p.5, and Exhibit C-4, p.5.

### 14. Ballot Issues

In a typical bankruptcy case, plan proponents utilize the form of ballot set forth in Official Form B14. However, in asbestos bankruptcies specialized forms of ballots are often used due to the sheer number of claims and the varying types of claims and specialized distribution procedures unique to each. Sheppard conducted significant research relating to the use of specialized ballots in asbestos cases and drafted form ballots to use along with voting procedures and a motion to approve the ballots. Sheppard also participated in multiple phone conferences and email correspondences with co-counsel, the Committee and the other Plan Proponents to revise the ballots, voting procedures and motion until all parties' concerns were addressed. Sheppard also reviewed and conferred regarding the objections to the ballot motion that were filed by certain of the Debtor's insurers.

Sheppard spent a total of 54.40 hours and incurred fees totaling $25,331.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p. 17, and Exhibit C-2, p.9, and Exhibit C-3, p.6.

Case: 09-31347   Doc# 882   Filed: 10/29/10   Entered: 10/29/10 10:00:52   Page 21 of 29
W02-WEST:5MML1\402985781.2                                          FOURTH INTERIM FEE APPLICATION

### 15. Disclosure Statement

Sheppard coordinated with the Debtor's counsel, the Futures Representative's counsel, and various other parties to revised and finalize the Disclosure Statement, which Sheppard filed on June 14, 2010. Sheppard also prepared and filed the notice of hearing on the Disclosure Statement, which was served on all creditors. Sheppard also reviewed and coordinated with the other Plan Proponents regarding the bullet point objections sent by the Debtor's insurers. Sheppard met with the Debtor's insurers in an attempt to resolve the issues raised in their bullet point objections, and maintained in constant contact with the Committee regarding all of the foregoing. Further, Sheppard coordinated with the other Plan Proponents and the Debtor's insurers regarding continued hearings on the Disclosure Statement and drafted stipulations continuing the Disclosure Statement hearing. Sheppard also conducted additional researched and revised a working draft of an amended Disclosure Statement based on further discussions with the parties in interest and further developments in the case.

Sheppard spent a total of 31.90 hours and incurred fees totaling $21,412.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.19, Exhibit C-3, p.7, Exhibit C-4, p.6, and Exhibit C-5, p.4.

### 16. Plan of Reorganization

Sheppard took the lead in drafting and coordinating all matters regarding the Plan of Reorganization that Sheppard filed on behalf of the Committee and the other Plan Proponents on June 14, 2010. The Plan and all of its related documents, including the trust distribution procedures and the matrix, were the culmination of negotiations extending back prior to the filing of the bankruptcy case, and the product of several months of drafting and negotiations over specific language and provisions. Sheppard participated in numerous conferences and negotiations regarding the Plan in the weeks leading up to its filings, and has continued to work hard on the plan confirmation process after the filing. Sheppard also conducted significant research on Plan issues both before and after the filing of the Plan.

Sheppard negotiated and prepared term sheets for settlements reflected in the Plan, and communicated closely with the Committee members regarding said settlements. Certain of these negotiations have continued to the present day, and have included extensive conferences, correspondences, analysis and in person meetings. Sheppard has worked closely with the Committee's financial consultants on these and other issues.

Sheppard also negotiated with the insurers both before and after the filing of the Plan regarding the insurers' comments to the draft Plan that Sheppard distributed to the insurers in May 2010, including an in person meeting with the insurers concerning the Plan and the insurers' term sheet of provisions they would like to see in a plan. Sheppard then coordinated with the Plan Proponents, co-counsel and the Committee to address the various issues in the insurers' term sheet and revised term sheet, researched issues that arose in connection with said term sheet and proposed revisions, and prepared a response to the term sheet. These negotiations over the Plan continued throughout the Fourth Application Period, and included multiple in person meetings. These extensive negotiations have involved multiple revisions to the working draft of the Plan, and continue today as the parties seek to resolve issues related to the Plan and facilitate the plan confirmation process.

Sheppard also reviewed and revised drafts of the Debtor's motion to extend exclusivity, coordinated with the Plan Proponents and the Committee regarding said motion, and represented the Committee's interests at the hearing on the motion, which was granted.

Sheppard spent a total of 338.60 hours and incurred fees totaling $220,829.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.24, Exhibit C-2, p.15, Exhibit C-3, p.12, Exhibit C-4, p.11, and Exhibit C-5, p.5.

### 17.    Bankruptcy Court Litigation

Sheppard conferred with the Debtor and with the Committee regarding a stipulation between the Committee and the Debtor to assign the estate's claims against Clay Gregory

and Monte Travis to the Committee. Sheppard then researched and drafted a motion to approve said stipulation. Sheppard also drafted and coordinated with the various parties in interest and the Court regarding stipulations to continue hearings on various motions and the Disclosure Statement so as to permit further settlement negotiations. Finally, Sheppard researched and drafted a reply in support of the Debtor's Third Motion to Extend Exclusivity.

Sheppard spent a total of 20.10 hours and incurred fees totaling $9,645.00 during the Third Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.25, Exhibit C-2, p.16, Exhibit C-3, p.13, and Exhibit C-4, p.13.

### 18. Deposition

Sheppard reviewed and prepared materials in advance of the deposition of David J. Gordon, which Sheppard attended.

Sheppard spent a total of 0.30 hours and incurred fees totaling $118.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.25.

### 19. Relief from Stay Litigation

Sheppard reviewed the draft relief from stay order regarding the Phase III insurance coverage trial, conferred with the Debtor regarding the issues posed by the insurers' comments to the same, and provided further comments to the order. Sheppard also conferred with the parties regarding a further stay relief matter and stipulated to the continuance of the same.

Sheppard spent a total of 2.40 hours and incurred fees totaling $1,778.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-2, p.16, and Exhibit C-5, p.6.

### 20. State Court Litigation

Sheppard's attorneys coordinated regarding a motion to approve a stipulation.

Sheppard spent a total of 0.10 hours and incurred fees totaling $39.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-3, p.13.

### 21. Motion to Approve Compromise of Controversy

Sheppard conferred and coordinated with the Debtor regarding its motions to approve two pre-petition settlements, and drafted and filed responses in support of said motions.

Sheppard spent a total of 3.00 hours and incurred fees totaling $1,672.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-2, p.17.

### 22. Professionals' Compensation (Other than Sheppard)

Sheppard reviewed the professionals' third interim fee applications and updated the Committee regarding the same. Sheppard also negotiated with the Debtor's counsel regarding alternative compensation arrangements and strategized regarding said matter with the Committee. Sheppard reviewed and coordinated with the Committee's co-counsel regarding Cover Sheet Applications and filed and served the same for co-counsel each month during the Fourth Application Period. Sheppard also prepared a draft Cover Sheet Application for the Committee's special counsel and filed the same. Finally, Sheppard also conferred with the Committee's financial consultant regarding local guidelines and the Cover Sheet Application process, reviewed and redacted the financial consultant's invoices for privileged information, and filed and served the financial consultant's Cover Sheet Application.

Sheppard spent a total of 26.10 hours and incurred fees totaling $13,998.50 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit C-1, p.26, Exhibit C-2, p.17, Exhibit C-3, p.14, Exhibit C-4, p.15, and Exhibit C-5, p.6.

### 23. Professionals' Employment (Other than Sheppard)

Sheppard interviewed several financial consultants to advise the Committee and the Futures Representative in connection with the Plan confirmation process. Sheppard had

W02-WEST:5MML1\402985781.2
FOURTH INTERIM FEE APPLICATION

multiple phone conferences and emails with the Committee regarding candidates and once Charter Oak Financial Consultants, LLC was selected as the candidate, Sheppard negotiated the terms of Charter Oak's employment and researched Charter Oak's background. Sheppard then drafted and filed an application to employ Charter Oak, along with all supporting declarations and documents. The application was approved and Charter Oak, which began work immediately after the application was filed, has aided the Committee and the Futures Representative in analysis of various Plan confirmation issues.

Sheppard also prepared an amended application to employ Mark Abelson's firm, Campagnoli, Abelson & Campagnoli, as special counsel to the Committee. This application was also approved by the Court.

Sheppard spent a total of 44.50 hours and incurred fees totaling $28,015.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit B, p. 19, Exhibit C, p.17, Exhibit D, p.16, and Exhibit E, p.7.

### 24. Sheppard Compensation

Sheppard prepared and filed Cover Sheet Applications in accordance with this Court's Knudsen Order every month during the Fourth Application Period. Sheppard also prepared, filed and attended the hearing on its Third Interim Fee Application, which was approved by the Court after a hearing on July 26, 2010. Finally, Sheppard reviewed its bills attached to such applications and redacted them for privileged information.

Sheppard spent a total of 63.40 hours and incurred fees totaling $25,542.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit A, p.29, Exhibit B, p.21, Exhibit C, p.18, Exhibit D, p.17, and Exhibit E, p.7.

### 25. Executory Contract – Analysis

Sheppard researched and reviewed issues relating to the Debtor's agreement with Flintkote for the retention of David Gordon as the Debtor's CEO. Sheppard then engaged in extensive negotiations and discussions regarding proposed revisions the agreement with Flintkote with the Debtor's counsel, the Futures Representative's counsel, and the Conflicts Executive.

Case: 08-31347    Doc# 802    Filed: 10/29/10    Entered: 10/29/10 10:00:52    Page 26 of 29
W02-WEST:5MML1\402985787.12                                         FOURTH INTERIM FEE APPLICATION

Sheppard spent a total of 29.90 hours and incurred fees totaling $22,323.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit B, p.21, and Exhibit D, p.19.

### 26.	Matrix/TDP Issues

Sheppard researched issues relating to the Trust Distribution Procedures attached to the Plan.

Sheppard spent a total of 2.00 hours and incurred fees totaling $730.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit B, p.18.

### 27.	Experts – Preparation of Expert Opinions

Sheppard worked with Dr. Mark Peterson to gather materials necessary for the preparation of his expert testimony regarding the Debtor's asbestos claims that the Committee has requested in connection with the plan confirmation process.

Sheppard spent a total of 1.60 hours and incurred fees totaling $1,008.00 during the Fourth Application Period on this Project Billing Category, as summarized on Exhibit B, p.19.

## VIII.

## EXPENSE REIMBURSEMENT

Sheppard seeks expense reimbursement for costs totaling $13,965.62.  Summaries of expenses advanced by Sheppard and detailed statements of costs advanced by Sheppard are set forth on the attached Exhibit C-1, at pages 31-32, Exhibit C-2, at pages 23 and 24, Exhibit C-3, at page 20, Exhibit C-4, at page 20, and Exhibit C-5, at pages 8 and 9.  These costs include photocopying, computerized legal research, telephone, courier service and postage.  Such expenses are billed at the actual cost to Sheppard.

Although Sheppard charges some of its non-bankruptcy clients for secretarial overtime, word processing costs and incoming faxes, Sheppard has not sought recovery of those costs from the Debtor's estate and those items have not been included on Exhibits C-1 through C-5.  Sheppard's internal billing system is designed to bill facsimile charges and

long distance charges together for all of its clients. Sheppard is thus unable to separate its facsimile and long distance charges for this matter. Sheppard does not charge for facsimile, other than the actual cost of any long-distance phone charges. Sheppard is seeking $166.79 for both facsimile and long distance charges – a sum that Sheppard believes is reasonable given the nature of the case and the services rendered on behalf of the Debtor. Sheppard believes that amount is significantly lower than the amount to be expected in most cases of this size. Sheppard attributes that savings to Sheppard's policy of scanning the documents in this case into PDF format in order to e-mail those documents to various parties. Sheppard does not charge for the scanning of those documents.

Sheppard uses the services of Xerox Corporation ("Xerox") for its in-house photocopy services. Sheppard has billed the estate at a rate of 25¢ per page for copies, which is the normal cost that Sheppard charges its non-bankruptcy clients. Sheppard sends photocopying and mailing projects to outside vendors when such vendors are capable of providing service more efficiently and economically than Sheppard's in-house service providers. Sheppard bills the estate for such projects at the actual cost to Sheppard.

## IX.

## CONCLUSION

WHEREFORE, Sheppard prays that the Court enter an order:

(1)     Granting interim approval of aggregate compensation sought in the Fourth Interim Application totaling $584,118.62, consisting of total professional fees of $570,153.00 and expenses of $13,965.62;

(2)     Ratifying any payments previously made to Sheppard for the Fourth Application Period pursuant to the Knudsen Order, which payments as of the filing of this Fourth Interim Application totaled $69,276.88, consisting of $63,672.74 in fees and $5,604.14 in expenses;

(3)     Authorizing the Debtor to make immediate payment to Sheppard of the $514,841.74 in allowed and outstanding amounts approved and unpaid, which amount consists of (a) $490,566.76  in fees and $6,340.79 in expenses not yet paid from

1  Sheppard's monthly Cover Sheet Applications; and (b) $17,934.19, consisting of

2  $15,913.50 in fees and $2,020.69 in expenses, incurred in the Fourth Application Period

3  and not previously billed;

4        (4)    Authorizing the Debtor to pay Sheppard all amounts sought in the Fourth

5  Interim Application and not yet paid to Sheppard; and

6        (5)    Granting such other and further relief as the Court may deem just and proper.

7  Dated:  October 29, 2010

8                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

9

10            By            */s/ Michael H. Ahrens*

11                       MICHAEL H. AHRENS

12              Attorneys for Official Committee of Unsecured

13                Creditors of Plant Insulation Company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 09-31347   Doc# 802   Filed: 10/29/10   Entered: 10/29/10 10:08:52   Page 29 of 29
W02-WEST:5MML1\402985787.12                                     FOURTH INTERIM FEE APPLICATION