Peter J. Benvenutti (Bar No. 60566)
Tobias S. Keller (Bar No. 151445)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone: (415) 626-3939
Facsimile: (415) 875-5700
Email: pjbenvenutti@jonesday.com
tkeller@jonesday.com

Lori Sinanyan (Bar No. 209975)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email: lsinanyan@jonesday.com

Attorneys for Debtor and Debtor in Possession
PLANT INSULATION COMPANY

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PLANT INSULATION COMPANY, a California corporation,<br><br>Debtor. | Case No. 09-31347-TC<br><br>Chapter 11<br><br>**JONES DAY'S FOURTH INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF FEES AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**<br><br>**Hearing**<br>Date: December 3, 2010<br>Time: 9:30 a.m.<br>Place: 235 Pine St., 23rd Floor<br>San Francisco, CA<br>Judge: Hon. Thomas E. Carlson |

**TO THE HONORABLE THOMAS E. CARLSON, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, AND PARTIES IN INTEREST:**

Jones Day, general bankruptcy counsel for debtor and debtor-in-possession Plant Insulation Company (the "Debtor" or "Plant"), hereby submits its Fourth Interim Application for Allowance and Payment of Fees and Reimbursement of Expenses for the Period from June 1, 2010 through September 30, 2010 (the "Application Period"), pursuant to sections 328 and 330 of Title 11 of the United States Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, the Order Granting Debtor's Motion To Establish Interim Fee Application and Expense Reimbursement Procedures [Dkt. No. 344] (the "Interim Procedures Order"), and the United States Bankruptcy Court Northern District of California Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees, which incorporates the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses promulgated by the Executive Office of the United States Trustee pursuant to 28 U.S.C. §586(a)(3)(A) (collectively, the "Fee Guidelines").

By this Application, Jones Day seeks (a) interim approval and allowance of fees in the amount of **$845,865.00** and expenses in the amount of **$19,526.25**, which were incurred during the Application Period; (b) authority to apply the retainer to unpaid allowed amounts; and (c) to the extent necessary payment from the Debtor of any remaining amounts that have been allowed, but not yet paid, with respect to the Application Period.[1]

The Declaration of Peter J. Benvenutti, filed concurrently herewith, supports this Application. In further support of this Application, Jones Day represents as follows:

**I.      JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] In view of the Debtor's constrained finances, in late May 2010 the Debtor imposed a payment moratorium applicable to all payments by the Debtor to its professionals (with certain exceptions) including Jones Day, pending the receipt of additional funds. As discussed in section VII.C below, Plant and Jones Day have negotiated a fee deferral agreement, and are considering the timing of such a filing.

JD INTERIM FEE APPLICATION;
CASE NO. 09-31347

- 2 -

## II. RETENTION

On June 11, 2009, the Court entered an order approving the Debtor's retention of Jones Day as its general bankruptcy counsel, *nunc pro tunc* to May 20, 2009 [Dkt No. 170].

## III. PRIOR COMPENSATION

This is Jones Day's fourth interim application for compensation and reimbursement of expenses. On December 15, 2009, the Court entered an order approving Jones Day's first interim fee application, which allowed, on an interim basis, fees in the amount of $457,100.00 and expenses in the amount of $14,134.88 for services rendered during the period from May 20, 2009 through September 30, 2009 [Dkt. No. 419]. On March 31, 2010, the Court entered an order approving Jones Day's second interim fee application, which allowed, on an interim basis, fees in the amount of $201,175.00 and expenses in the amount of $4,361.16 for services rendered during the period from October 1, 2009 through January 31, 2010 [Dkt. No. 520]. On July 30, 2010, the Court entered an order approving Jones Day's third interim fee application, which allowed, on an interim basis, fees in the amount of $357,712.50 and expenses in the amount of $4,665.79 for services rendered during the period from February 1, 2010 through May 31, 2010 [Dkt. No. 770]. Pursuant to the Interim Procedures Order, Jones Day has also submitted monthly fee statements and has obtained authority to receive interim compensation and expense reimbursement in connection with those fee statements in the following amounts:

| Fee Statement Period | Fees Sought (100%) | Expenses Sought (100%) | Expenses Authorized (100%) | Fees Authorized (80%) | Fees Authorized But Unpaid | Unauthorized Fees (20%) or Disallowed | Unpaid Expenses |
|---|---|---|---|---|---|---|---|
| 5/20/09 – 8/31/09 (1st Interim) | $423,940.00 | $13,287.53 | $13,287.53 | n/a | n/a | $0.00 | $0.00 |
| 9/1/09 – 1/31/2010 (2nd Interim) | $202,250.00 | $4,361.16 | $4,361.16 | n/a | n/a | $1,075[2] | $0.00 |
| 2/1/10 – 5/31/10 (3rd Interim) | $357,712.50 | $4,655.79 | $4,655.79 | n/a | n/a | $0.00 | $0.00 |

---

[2] These fees were disallowed pursuant to the Court's order entered March 31, 2010.

JD INTERIM FEE APPLICATION;
CASE NO. 09-31347

- 3 -

| Fee Statement Period | Fees Sought (100%) | Expenses Sought (100%) | Expenses Authorized (100%) | Fees Authorized (80%) | Fees Authorized But Unpaid | Unauthorized Fees (20%) or Disallowed | Unpaid Expenses |
|---|---|---|---|---|---|---|---|
| 6/1/20 – 6/30/2010 | $262,350.00 | $7,426.85 | $7,426.85 | $209,880.00 | n/a | $52,470.00 | $0.00 |
| 7/1/2010 – 7/31/2010 | $207,805.00 | $5,220.84 | $5,220.84 | $166,244.00 | $156,621.57 | $41,561.00 | $0.00 |
| 8/1/2010 – 8/31/2010 | $232,335.00 | $3,458.93 | $3,458.93 | $185,868.00 | $185,868.00 | $46,467.00 | $3,458.93 |
| 9/1/2010 – 9/30/2010 | $143,375.00 | $3,419.63 | Objection period not yet lapsed | Objection period not yet lapsed | | | |

## IV. CASE BACKGROUND

On May 20, 2009 (the "Petition Date"), Plant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its property and continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On May 29, 2009, the Office of the United States Trustee (the "UST") appointed the Official Committee of Unsecured Creditors ( the "Committee"). On June 8, 2009, the Court entered an order appointing Charles B. Renfrew as representative of persons who might subsequently assert personal injury and wrongful death demands for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products in connection with the Debtor's past operations (the "FCR"). In May 2010, the UST filed a motion for the appointment of a Chapter 11 trustee, which this Court denied at a hearing held June 29, 2010, and by Order entered July 30, 2010 [Dkt. No. 771].

By this Chapter 11 case, the Debtor is invoking Bankruptcy Code section 524(g) to seek confirmation of a plan of reorganization as a means of resolving the asbestos-related personal injury and wrongful death claims asserted against it. On June 14, 2010, the Debtor, the Committee and the FCR jointly filed a plan and related disclosure statement that would create a trust from which asbestos-related claims could be paid and which would impose such a section 524(g) injunction.

## V. CASE STATUS

Plant filed this Chapter 11 case to deal with the exposure it faced from the thousands of asbestos bodily injury, wrongful death and loss of consortium claims and lawsuits for damages allegedly caused in whole or in part by exposure to asbestos-containing materials installed or supplied by Plant dating back to the 1930s (collectively, the "Asbestos Cases"), especially in light of its insurers' position that coverage under Plant's liability policies had been exhausted.[3] Since the Petition Date, Jones Day has taken the lead role in advising the Debtor on its overall bankruptcy strategy and day-to-day case administration, operations and proceedings. Jones Day has also coordinated with the Debtor's special insurance counsel Snyder, Miller & Orton LLP ("SMO") and Morgan, Lewis & Bockius LLP ("MLB") with respect to the coverage disputes arising from the declaratory relief action filed in the Superior Court for the State of California (the "State Court") by Plant on January 17, 2006, captioned *Plant Insulation Company v. Fireman's Fund Insurance Company, et al.* (No. CGC-06-448618) ("Declaratory Relief Action"), to provide Plant with effective legal representation in view of the intersection and importance to Plant of two separate areas of law – bankruptcy and insurance. The Phase II trial[4] of this complex litigation was pending before Judge John Munter, pursuant to this Court's order modifying the automatic stay [Dkt. No. 105]. On May 5, 2010, Judge Munter entered his decision on Phase II, which was extremely favorable to Plant. On July 12, 2010, this Court entered its order granting the Debtor's motion to vacate the automatic stay to allow the State Court to adjudicate all remaining non-monetary claims and crossclaims in the Declaratory Relief Action. A case management conference is scheduled before Judge Munter in November, at which further proceedings are likely to be scheduled, including a "Phase III" trial which Plant anticipates will be set sometime after the middle of 2011.

---

[3] Additional information regarding the history of the Debtor and events precipitating the bankruptcy case are set forth in detail in the declarations of David J. Gordon and James Miller [Dkt. Nos. 289 and 290].

[4] The Phase II trial commenced on June 1, 2009. That trial involved three affirmative defenses pleaded by the insurers. It was tried to the Court without a jury. The three defenses included "judicial estoppel", "unclean hands" and waiver. The insurers contended that if established, the defenses, or any of them, should result in the dismissal of Plant's complaint in the Declaratory Relief Action. Plant disputed the insurers' contentions.

On April 22, 2010, the Debtor filed a motion to approve its employment of a "Conflicts Executive" to address certain specific limited conflicts or potential conflicts involving Plant's chief executive, David Gordon, that had been identified by Plant or its primary creditors (the Committee and the FCR). In response the UST filed a countermotion to appoint a Chapter 11 trustee, in which certain insurers joined. These motions led to depositions of the Conflicts Executive (in May 2010) and Mr. Gordon (in June 2010), and required considerable briefing and the preparation of extensive declarations. At a hearing on June 29, 2010, this Court granted the Debtor's conflicts executive motion and denied the motion to appoint a Chapter 11 trustee.

As a result, the momentum generated by the favorable Phase II decision and the filing of the plan may now continue. The Debtor, in cooperation with the Committee and the FCR, intends to make every effort to proceed toward confirmation of a plan of reorganization as promptly as circumstances will permit. To that end, during this Application Period, the Debtor engaged in substantial discussions and negotiations with the other plan proponents, the various objecting insurers, Bayside, potential settling insurers, and potential financing sources all in furtherance of the plan that was filed in June 2010. Currently the plan proponents and the objecting insurers are negotiating a stipulation further rescheduling the hearing on approval of the disclosure statement to December 13, 2010. The Debtor expects to conclude its negotiations with Bayside and the other plan proponents, and to be in a position to modify the current plan and disclosure statement accordingly, substantially prior to the December 13 hearing date.

In addition, the Debtor continues to work with the conflicts executive on certain matters including the negotiation of the Flintkote agreement which it hopes to successfully conclude shortly and file for a motion for approval of such agreement.

In view of the Debtor's constrained finances, in late May 2010 the Debtor imposed a payment moratorium applicable to all payments by the Debtor to its professionals (other than the FCR, its accountants and the conflicts executive),[5] pending the receipt of additional funds.

---

[5] This moratorium does not apply to payments to employees or the UST, or to the application by professionals of remaining retainer balances. The moratorium does apply to payments to Flintkote.

## VI. SERVICES RENDERED AND BASIS FOR COMPENSATION THEREOF

Section 330(a) of the Bankruptcy Code provides that the Court may award "reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional employed by any such person." 11 U.S.C. § 330(a)(1)(A). In determining the amount of reasonable compensation to be awarded, the Court shall consider the nature, extent, and the value of such services, taking into account all relevant factors, including: (a) the time spent on such services; (b) the rates charged for such services; (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under Title 11; (d) whether the services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and (e) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under Title 11. *See* 11 U.S.C. § 330(a)(3)(A) – (E).

Jones Day's services in this case for the Application Period are described in detail in the billing statements attached as **Exhibit A** to this Application. Consistent with the Fee Guidelines, Jones Day's services are allocated among billing categories, as described in Part VI and in **Exhibit B** to this Application. **Exhibit B** presents for each billing category the total number of hours of services devoted by each attorney or paralegal, that person's regular hourly billing rate, and the fees requested for those services based on regular hourly rates. Attached hereto as **Exhibit C** is a chart that summarizes the fees billed by Jones Day during the Application Period by category and by month. Attached hereto as **Exhibit D** is a chart that summarizes the expenses billed by Jones Day during the Application Period by category and by month. Copies of the professionals' biographies are attached hereto as **Exhibit E**. The allocation reflected on the attached exhibits and in the narrative descriptions in the following portions of this Application represents Jones Day's reasonable best efforts to categorize its services in the spirit of the Fee Guidelines.

## VII. NARRATIVE DESCRIPTION OF SERVICES[6]

### A. Case Administration (605004):

**Fees sought: $47,427.50; Hours: 94.90.**

The services in this category include a broad array of services which do not fit within other billing categories as well as routine case management. Among other things, Jones Day:

(a) conferred with the Jones Day team and client regarding a case action plan;

(b) maintained a detailed case management database containing deadlines, pleadings, correspondence, and transcripts;

(c) created and maintained a detailed work in progress report for ease of case administration and coordination;

(d) created, revised, and updated various other case organizational materials such as contact lists and service lists;

(e) prepared and filed a *pro hac vice* application and notice of appearance for Jones Day attorneys working on the Chapter 11 case;

(f) advised and coordinated with the Debtor with respect to administrative matters and case status updates; and

(g) provided administrative assistance with hearing preparation generally.

### B. Relief from Stay/Adequate Protection Proceedings (605005):

**Fees sought: $8,242.50; Hours: 11.40.**

In light of the State Court's Phase II decision which was highly favorable to Plant, and at the Debtor's request and on the advice of and in coordination with coverage counsel, in May 2010, Jones Day filed a second motion to modify the automatic stay as to the Declaratory Relief Action to enable the State Court to adjudicate all remaining claims and crossclaims for non-monetary relief not previously resolved in Phase I or Phase II. The hearing was scheduled for June 29, 2010; the motion was not opposed, although various of the insurers requested the

---

[6] Not all services fit neatly within one or another of the designated categories, and consequently there is some overlap.

inclusion of specific provisions in the order. A form of order was agreed upon, and this Court entered an order providing stay relief on July 12, 2010.

The fees in this category are attributable to: (i) the request for relief from stay relating to the Declaratory Relief Action, described immediately above, and (ii) negotiations, communications, and other efforts regarding a motion for relief from stay filed in 2009, shortly after the commencement of the case, by asbestos claimants Cloristeen and Patricia Collins, who had obtained a pre-petition judgment against Plant that was the subject of a pending appeal, with an appeal bonded posted in favor of the claimants by Plant's insurers. This Court initially granted the motion in part, permitting the appeal to proceed, but deferring a ruling on the Collins claimants' request for relief to permit them to recover on the bond if their judgment were sustained on appeal. Jones Day negotiated with the claimants and Plant's insurers an agreed deferral of the briefing and hearing schedule on the stay relief request relating to the bond while the appeal proceeded. When the California Court of Appeal reversed the judgment in favor of the Collins claimants and remanded for further proceedings, Jones Day negotiated with the claimants and Plant's insurers a stipulation withdrawing the request for relief from stay.

**C.     Fee/Employment Applications (Jones Day) (605006):**

**Fees sought:  $56,960.00; Hours: 116.10.**

The fees in this category are attributable to:

(a)    the preparation and approval of Jones Day's third interim fee application covering the four-month period from June February 1, 2010 through May 31, 2010, including all exhibits and declarations required under the Fee Guidelines and a detailed reconciliation of its pre-petition retainer. Jones Day prepared and filed a notice of the fee application hearing and presented at such hearing;

(b)    the preparation of monthly fee statements for the Application Period;

(c)    the preparation of supplemental conflict disclosure schedules, which were filed in the Court in October 2010;

(d)    the negotiation with Plant of a fee deferral agreement, the drafting of a motion to approve that agreement, and negotiations with the Committee and FCR to seek their

support for that agreement, including with possible modification of the terms agreed to with Plant. The context is the inability of Plant to pay Jones Day's fees on a current basis due to its limited cash resources, and the agreement between Jones Day and Plant at the inception of the case giving Jones Day the right to withdraw from this engagement in the absence of a satisfactory arrangement in lieu of current payment. Jones Day reached agreement with Plant on the terms of such an agreement in August 2010, but has deferred filing a motion to approve that agreement while pursuing discussions with the Committee and the FCR regarding possible modifications to the terms of that agreement which agreement would then be supported by the Committee and FCR. While there have been constructive discussions to that end, no agreement has yet been reached, and Plant and Jones Day are considering filing the motion to approve the agreement without the support of the Committee and FCR. A decision to file the motion is likely to be made before the hearing on this Application.

**D.     Fee/Employment Applications (Other) (605007):**

**Fees sought: $13,187.50;    Hours: 19.60.**

The fees in this category relate primarily to Jones Day's:

(a)     negotiation and discussions with the Committee regarding retention of a financial advisor, including review of the employment application and terms of employment for such advisor

(b)     review of fee applications filed by various professionals in the Chapter 11 case;

(c)     discussions relating to payment of fees for the FCR, his counsel; and the Conflicts' Executive;

(d)     defense of opposition filed to Conflicts' Executive's retention application;

(e)     matters related to the fee application hearing; and

(f)     assistance to the Debtor's professionals with the preparation of their monthly fee and expenses statements and interim fee applications, including filing an omnibus notice of the hearing on the fee applications.

**E.  Tax Issues (605008):**

**Fees sought:  $22,580.00; Hours: 33.10.**

The fees in this category relate primarily to Jones Day's work on a thorough review, analysis, and updating of the tax provisions in the plan and disclosure statement.

**F.  Asset Analysis and Recovery (605009):**

**Fees sought:  $8,697.50; Hours: 11.60.**

These minimal fees relate to Jones Day's continued discussions with the Committee regarding assignment of claims against John Gregory and Monte Travis to the Committee for potential prosecution and research of certain issues relating to such assignment.  Jones Day also analyzed and discussed the potential of transferring the right to recover funds from the Fibreboard Trust to the Committee.

**G.  Financing/Cash Collections (605010):**

**Fees sought:  $13,742.50; Hours: 17.50.**

Jones Day analyzed the current and projected cash position of the Debtor.  In light of such position, Jones Day assisted Plant in its efforts to identify and pursue funding from possible financing sources.

**H.  Appeals (605012):**

**Fees sought:  $775.00; Hours: 1.00.**

These minimal fees involve Jones Day's communications with the counsel regarding a status report to the Court of Appeals as related to the Findlay appeal, which remains pending but stayed by the automatic stay.

**I.  Plan and Disclosure Statement (605014):**

**Fees sought:  $295,772.50; Hours: 519.70.**

The disclosure statement hearing on the plan filed June 14, 2010 was initially scheduled for August 3, 2010.  Working towards that end, Jones Day spent a significant amount of time and effort on the plan and disclosure statement.  Although the Committee took the lead in drafting the initial version of the plan and disclosure statement in the Spring of 2010, Jones Day and Plant were involved heavily in its drafting.  Since the filing of the disclosure statement and plan, Jones

Day has taken over responsibility to further review and revise the plan and disclosure statement to address (i) informal objections raised by various insurers or other parties, (ii) negotiations with Bayside, (iii) continued discussions and comments from the various plan proponents, and (iv) other updates. In particular, Jones Day along with counsel for the other plan proponents spent a significant amount of time reviewing and responding to both the various non-settling insurers' proposed term sheets and the informal disclosure statement objections raised by these insurers, including attending in-person negotiation meetings to resolve outstanding objections. By agreement with the insurers, the plan proponents rescheduled the disclosure statement hearing to November 15, 2010.[7] In order to begin to prepare for the plan confirmation process and to resolve a number of outstanding issues with the objecting insurers, Jones Day also spent a significant amount of time conducting legal research related to various confirmation issues, including analysis of the § 1129 confirmation standards, case law related to § 524(g) plans, treatment of non-settling insurers, assignability of insurance contracts, and other plan related issues.

A component of the plan is dependant on finalizing negotiations with Bayside. Also included in this matter is time related to all of the discussions and negotiations with Bayside.

Additionally, various insurers filed several motions – (i) a motion to set a confirmation schedule, (ii) a motion to have solicitation, voting and balloting procedures and forms approved, and (iii) a motion requiring 2019 disclosures for the Committee. A portion of Jones Day's fees during the Application Period relate to time spent discussing these motions with the plan proponents, drafting objections to each motion, and negotiating with the insurers regarding a stipulation to continue these matters to the date of the disclosure statement hearing.

The Debtor and the Committee also prepared their own ballot, solicitation and voting procedures motion. Jones Day had substantial involvement in the preparation of this motion as well.

---

[7] The parties are currently discussing a further consensual postponement of the disclosure statement hearing to December 13, 2010.

JD INTERIM FEE APPLICATION;
CASE NO. 09-31347
- 12 -
Case: 09-31347  Doc# 886  Filed: 10/29/10  Entered: 10/29/10 15:38:41  Page 12 of 17

1    Finally, the Debtor drafted, filed, and successfully argued for a further extension of the
2    Debtor's exclusive period for soliciting acceptance of its plan to January 20, 2011.

### J.     Claims Administration and Objections (605016):

**Fees sought:  $15,940.00; Hours: 32.40.**

During this Application Period, Jones Day coordinated with coverage counsel to prepare legal objections to certain elements of the insurers' proofs of claim and began drafting objections to certain of the claims filed by parties other than insurers. Jones Day drafted claims objections, developed an evidentiary record in support thereof and communicated with the Committee and the FCR regarding the advisability of bringing such objections. The Debtor anticipates filing certain of these objections in due course. Some time was also spent organizing and reviewing the claims filed to date.

### K.     Assumption and Rejection of Leases and Contracts (605017):

**Fees sought:  $53,775.00; Hours: 75.00.**

During this Application Period, Jones Day's time in this category focused on assuming pre-petition settlement agreements between Plant and each of United National Insurance Company ("UNIC") and Sompo Japan Insurance Company of America ("Sompo"). These assumption motions were met with concerted opposition by various insurers. Jones Day and the other plan proponents spent a significant amount of time reviewing and coordinating responses to the objections to assumption. Additionally, one insurer filed evidentiary objections to the declarations in support of the assumption motions. Jones Day prepared its opposition to these evidentiary objections. This Court ruled in favor of the Debtor in respect of these motions after a hearing on August 3, 2010. This Court drafted an order approving the assumption motions. The Debtor and objecting insurers spent additional time negotiating and finalizing the language of the proposed orders.

**L.  Insurance Issues/Litigation (605018):**

**Fees sought:  $70,870.00; Hours: 132.50.**

The fees in this category relate to Jones Day's efforts in coordinating with and assisting coverage counsel, settlement negotiations with one or more insurers, and dealing with the host of issues arising from the insurers' significant involvement in this case.  Jones Day:

    (a) communicated with the Debtor and coverage counsel regarding overall strategy in the coverage litigation and bankruptcy cases;

    (b) devoted considerable time to negotiations with one or more potential settling insurers and the various plan proponents regarding possible terms of settlement;

    (c) conducted legal research essential to settlement with insurers including potential buyback of insurance policies as part of settlement negotiations; and

    (d) conducted legal research regarding the assignability of insurance contracts for plan purposes.

Some time in this category relates to the terms of the motion to assume the settlement with UNIC and Sompo, and the terms of the proposed order, and should be included in the total above for matter 605017.

**M.  Creditor Committee Communications (605019):**

**Fees sought:  $1,440.00; Hours: 1.80.**

These minimal fees involve Jones Day's communications directly with counsel for the Committee when such conversations involve overall case strategy and administration or simply a variety of topics such that it did not make sense to categorize elsewhere.

**N.  Operating Reports (605020):**

**Fees sought:  $1,617.50; Hours: 2.60.**

The fees in this category relate to Jones Day's assistance to the Debtor and its accountants in collecting information for the Debtor's monthly operating reports.  Jones Day also reviews and comments on the final draft of the Debtor's monthly operating reports, as appropriate.

**O.   Chapter 11 Trustee Issues (605021):**

**Fees sought: $220,545.00; Hours: 355.00.**

As discussed above, shortly after the Debtor filed a motion to appoint Hon. Ken M. Kawaichi (Ret.) as conflicts executive ("Conflicts Executive"), the UST filed a counter motion to appoint a Chapter 11 trustee. The fees in this category were primarily incurred in the month of June and relate to Jones Day's extensive and successful efforts on behalf of the Debtor to defeat the motion, including:

    (a)    legal research regarding the standards for the appointment of a trustee;

    (b)    preparing and filing a reply brief responding to the objections to the motion appointing the conflicts executive;

    (c)    preparing and filing the Debtor's opposition to the UST's motion to appoint a Chapter 11 trustee;

    (d)    preparing for and defending David Gordon's deposition;

    (e)    preparing the orders following the hearing, and negotiating with the various insurers to resolve their objections to such orders.

**P.   Conflicts Executive (605022):**

**Fees sought: $12,202.50; Hours: 19.70.**

The fees in this category relate to Jones Day's continued discussions with the Conflicts Executive regarding the conflict executive's assignments, including negotiation of the Flintkote agreement, other assignments, and general case issues.

**Q.   Employee Issues (610001):**

**Fees sought: $2,320.00; Hours: 2.90.**

These minimal fees relate to Jones Day's review of and advice to the Debtor regarding the response to the Committee's concerns about the employment agreements between the Debtor and its employee John Gregory.

## VIII. EXPENSE REIMBURSEMENT REQUEST

Jones Day has also incurred necessary and allowable expenses in connection with the services described in Part VII above in the net amount of **$19,526.25**, as more specifically detailed in **Exhibit C** (expenses by category and by month).

## IX. REQUIRED DISCLOSURES AND CERTIFICATION

In this case, Jones Day has not charged for expenses for: (a) office overhead; (b) secretarial or other staff overtime; (c) charges for after-hours and weekend air conditioning and other utilities; (d) cost of meals or transportation provided to attorneys and staff working locally, unless incurred in the course of an in-office business meeting with "outside" individuals; (e) word processing and similar clerical functions; and (f) amenities such as newspapers, shoe shines, dry cleaning, etc.

Jones Day's in-house photocopying is charged at 20 cents per page.

Jones Day seeks compensation for computerized legal research services at actual cost, as best estimated by Jones Day.

Jones Day's requested compensation and expense reimbursement have been billed at rates, in accordance with practices, no less favorable than those customarily employed by Jones Day and generally accepted by Jones Day's clients. Jones Day believes that the hourly rates of the attorneys and paralegals practicing at Jones Day are consistent with those prevailing in the San Francisco Bay Area community for similar services of lawyers and paralegals of reasonably comparable skill and reputation in such community

Jones Day has neither received nor been promised any compensation from any source in connection with this case or its services to be performed herein, except compensation and reimbursement of expenses to be allowed by this Court and paid from the estate, pursuant to the applicable provisions of the Bankruptcy Code and Rules.

Jones Day has no agreement for sharing any compensation which Jones Day may receive in this case with any person other than members and associates of Jones Day.

As described in Jones Day's first fee application, Jones Day and Plant have agreed to an open-ended extension of Plant's deadline to comply with paragraph 4 of Jones Day's engagement

letter, which requires Plant to provide further assurances regarding the sources of funds it would use to pay the administrative expenses of its bankruptcy case, including the fees and expenses of Jones Day. One possible way identified in the letter to provide such assurance is the possible negotiation of and agreement to a deferred compensation arrangement between Jones Day and Plant. As described in VII.C above, the Debtor and Jones Day have concluded negotiations on such an agreement and have discussed such arrangement with counsel for the FCR and the Committee in an effort to obtain their support on the agreed terms. With or without such support, Jones Day expects to file the motion for approval of the deferred fee arrangement in the near term. Until this Court's rules on the motion to approve the deferred fee arrangement, under the open-ended extension, Jones Day has reserved its right to withdraw from its representation of Plant, subject to the right of either Plant or Jones Day to terminate such extension on 45-days' notice to the other party. No such notice has been given.

## X. REQUEST FOR COMPENSATION

Based on the foregoing, Jones Day requests that the Court (i) approve this Application; (ii) allow Jones Day fees and expenses in connection with the Application Period on an interim basis in the respective amounts of **$845,865.00** and **$19,526.25**; and (iii) authorize the Debtor to pay any remaining unpaid allowed amounts forthwith.

DATED: October 29, 2010              JONES DAY

By: /s/ *Peter J. Benvenutti*
    Peter J. Benvenutti
Attorneys for Debtor and Debtor in Possession
Plant Insulation Company

SFI-651598v5